UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRUCE PARKER,

Petitioner,

v.

Civil No. 11-14197
HONORABLE PATRICK J. DUGGAN

RAYMOND BOOKER,

Respondent.
_______________________________________/

**OPINION AND ORDER (1) GRANTING PETITIONER'S MOTION TO AMEND; (2) DENYING PETITIONER'S REQUEST FOR AN EVIDENTIARY HEARING; (3) DENYING THE PETITION FOR WRIT OF HABEAS CORPUS; AND (4) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

Petitioner Bruce Parker ("Petitioner"), a Michigan Department of Corrections' inmate, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his state court convictions in October 2008 for armed robbery, Michigan Compiled Laws § 750.529; first-degree home invasion, Michigan Compiled Laws § 750.110a (2); unlawful imprisonment, Michigan Compiled Laws § 750.349b; possession of a firearm in the commission of a felony [felony-firearm], Michigan Compiled Laws § 750.227b; conspiracy to commit first-degree home invasion, Michigan Compiled Laws § 750.157a; and being a second felony habitual offender, Michigan Compiled Laws § 769.10. For the reasons that follow, the Court grants Petitioner's motion to amend but denies his request for an evidentiary hearing and for habeas relief. The Court also is declining to issue a certificate of appealability ("COA").

## I. Background

On October 3, 2008, Petitioner was convicted of the above charges following a jury trial in the Circuit Court for Kalamazoo County, Michigan. The Michigan Court of Appeals relied upon the following relevant facts, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1):

> This case arises out of a November 16, 2007, early morning home invasion and armed robbery perpetrated by several men at a Kalamazoo, Michigan duplex where five young college women lived and a friend was staying the night. Defendant contends that he happened upon the home invasion, believing it to be the site of a party, and tried to stop the robbery as it was occurring, but hid in fear when a SWAT team arrived and surrounded the house.[] At trial, several of the victims identified defendant as being the first intruder and actively participating in the robbery.

*People v. Parker*, No. 288988, 2010 WL 1565538, at *1 (Mich. Ct. App. April 20, 2010) (footnote omitted) (unpublished opinion). The Michigan Court of Appeals affirmed Petitioner's convictions on appeal. *Id*. On September 15, 2010, the Michigan Supreme Court denied Petitioner's request for leave to appeal. *People v. Parker*, 488 Mich. 863, 788 N.W.2d 12 (2010).

Petitioner then filed a post-conviction motion for relief from judgment pursuant to Michigan Court Rule 6.500, which the trial court denied. *People v. Parker*, No. 2007-1823-FC (Kalamazoo Cnty. Cir. Ct. Nov. 9, 2010) (unpublished opinion). The Michigan appellate courts denied Petitioner leave to appeal. *See People v. Parker*, No. 301367 (Mich. Ct. App. Feb. 3, 2011), *leave denied*, 490 Mich. 858, 802 N.W. 2d 344 (2011).

On September 23, 2011, Petitioner filed the pending application for a writ of habeas corpus in which he raises the following grounds in support of his request for relief:

> I. Petitioner was deprived of his Sixth and Fourteenth Amendment rights to a fair trial and due process when the trial court failed to ensure his presence at critical stages of his trial.
>
> II. Petitioner was deprived of a fair trial and due process when the trial court's misstatement of the law diminished the prosecution's burden of proof.
>
> III. Petitioner was deprived of his Fifth, Sixth, and Fourteenth Amendment rights to a fair trial when he was unjustifiably shackled during trial and was observed in these restraints by at least one juror.

Petitioner subsequently filed a motion to amend and a motion for an evidentiary hearing.

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 1519-20 (2000). An "unreasonable application" occurs when a state court has applied clearly established federal law in an objectively unreasonable manner. *Id*. at 409, 120 S. Ct. at 1521. Therefore, a federal habeas court may not issue a writ if it concludes the state court applied clearly established federal law merely erroneously or incorrectly. *Id*. at 411, 120 S. Ct. at 1522. The application must be unreasonable. *Id*.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, – U.S. – , 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7, 117 S. Ct. 2059, 2067 n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 360 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, – U.S. – , 131 S. Ct.770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 2149 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. Furthermore, pursuant

to § 2254(d), "[A] habeas court must determine what arguments or theories supported or … could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id*.

## III. Petitioner's Motions to Amend and for an Evidentiary Hearing

### A. Motion to Amend

Petitioner has filed a motion to amend, in which he seeks to supplement his third claim concerning the alleged unjustified shackling to add an argument that his appellate counsel was ineffective for failing to raise this claim on direct appeal.

Petitioner's proposed amended habeas petition alleges additional support for the claims that he raised in his original petition, was not the subject of undue delay, and would not unduly prejudice respondent. *See Riley v. Taylor*, 62 F.3d 86, 92 (3rd Cir. 1995). Additionally, the motion was filed before the Court adjudicated the issues in his petition. *See Stewart v. Angelone*, 186 F.R.D. 342, 344 (E.D. Va. 1999). Accordingly, the Court is granting the motion.

### B. Motion for an evidentiary hearing

Petitioner also has filed a motion for an evidentiary hearing with respect to his third claim.

Granting an evidentiary hearing is contingent upon whether the hearing could "enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474,

127 S. Ct. 1933, 1940 (2007). "Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." *Id*. If the record refutes the habeas petitioner's factual allegations or "otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*. In other words, a habeas petitioner is not entitled to an evidentiary hearing on his claims if they lack merit. *See Stanford v. Parker*, 266 F.3d 442, 459-60 (6th Cir. 2001). Because Petitioner's third claim lacks merit, as will be discussed in greater detail below, Petitioner is not entitled to an evidentiary hearing. Therefore, the Court is denying his motion for an evidentiary hearing.

## IV. Petitioner's Grounds for Habeas Relief

### A. Petitioner's claim involving his absence from a critical stage of the proceedings

Petitioner first claims that he was deprived of his Sixth and Fourteenth Amendment rights to be present at a critical stage of the trial where the judge, prosecutor, and defense counsel discussed, outside of Petitioner's presence. three written questions submitted by the jury during their deliberations. The trial record reflects that these questions were raised and answered:[1]

> Judge: "The record will reflect that there have been several questions– legal questions from the jury. Each of those had been in writing. Pursuant to the court rule I have consulted

[1]The written questions and answers were sealed.

> with the attorneys and answered those questions in writing. All of those questions have been made part of the record, and were stamped and entered into the file.
>
> Is there anything that needs to be placed on the record before we receive the jury and accept their verdict?

Ms. Sanford: “Nothing for the people, your Honor.”

Mr. Burson: “No, your Honor.”

(10/2/08 Trial Tr. at 554.)

The jury’s first question was: “Were the prints on the jar ‘bad prints’ and not able to be matched to anyone or were they just not matchable to the suspects and homeowners?” The judge responded in writing: “This information is not in evidence. You must base your decision only on the testimony and exhibits admitted.” (*See* Doc. 1 at 15; Doc. 8 at 17.)

The jury’s second question was: “If 5 people entered a bank to rob it, and only 3 had weapons, could all be found guilty of armed robbery?” The judge responded in writing: “Yes, but please review Jury Instruction 8.1 which is attached.” (*See* Doc. 1 at 15; Doc. 8 at 18.)

The jury’s final question was: “So even if all the elements aren’t met, we can still come to a decision of guilty if we feel he aided and abetted others that did meet all the elements?” The judge responded in writing: “Yes. You can find defendant guilty if you find the elements of jury instruction 8.1 to have all been proven.” (*See* Doc. 1 at 15; Doc. 8 at 19.)

Although Petitioner was not present when the judge answered these questions, the Michigan Court of Appeals found that the judge consulted with the prosecutor and Petitioner's trial counsel regarding the jury's questions. *Parker*, 2010 WL 1565538, at *2 and n.4.

A defendant has a constitutional right to "be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S. Ct. 2658, 2667 (1987). This right, however, "is not absolute, but exists only when 'his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'" *U.S. v. Henderson*, 626 F.3d 326, 343 (6th Cir. 2010) (quoting *United States v. Brika*, 416 F.3d 514, 526 (6th Cir.2005) (quoting *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S. Ct. 2658, 2667)). "In other words, the defendant's presence is not guaranteed when it would be 'useless,' but only 'to the extent that a fair and just hearing would be thwarted by his absence.'" *Id*. (quoting *Brika*, 416 F. 3d at 526).

Petitioner's right to be present at a critical stage of his trial was not violated by his absence from discussions involving the jury's questions and the judge's written answers to those questions. First, Petitioner's counsel was consulted by the judge with respect to the three questions. Second, Petitioner offers no argument showing that his presence would have changed the proceedings. In other words, there is no indication that Petitioner could have done or gained anything if he had been present with respect to the judge's response to the jurors' three questions. Petitioner's presence during the judge's

discussion of the contents of the jury's questions and his proposed answers would have largely been "useless."

Moreover, in answering the jury's first question concerning whether there were "bad" fingerprints on the jar and whether they could be matchable to anyone, the judge simply informed the jurors that this information had not been introduced into evidence and they were only to consider the testimony and the exhibits that had been admitted. A defendant does not suffer prejudice by being absent when the judge informs the jurors not to consider matters that have not been introduced into evidence. *See e.g. U.S. v. Jones*, 664 F.3d 966, 982-83 (5th Cir. 2011), *cert. den.* 132 S. Ct. 2728 (2012). The judge's answers to the jury's second and third questions simply referred the jurors to the aiding and abetting instruction. The Sixth Circuit has held that a defendant is not deprived of a fair trial when, in the defendant's absence, "the judge did nothing more than give the jurors a technical and perfunctory rereading or explanation of previously-given instructions." *Brika*, 416 F.3d at 527. That is precisely what the trial court did in Petitioner's case. Petitioner therefore fails to show that his absence prejudiced or deprived him of a fair trial. As such, he is not entitled to habeas relief based on his first claim.

**B. Petitioner's claim concerning the prosecution's burden of proof**

Petitioner next contends that the trial court misstated the law regarding the prosecutor's burden of proof when answering the juror's third question. Again, the jury asked: "So even if all the elements aren't met, we can still come to a decision of guilty if

we feel he aided and abetted others that did meet all the elements?" *See supra*. The judge responded in writing: "Yes. You can find defendant guilty if you find the elements of jury instruction 8.1 to have all been proven." *See id*. Petitioner contends that this response gave the jurors the impression that they could convict Petitioner even if the prosecutor did not prove all of the elements of the crimes beyond a reasonable doubt.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. *See Hedgpeth v. Pulido*, 555 U.S. 57, 58, 129 S. Ct. 530, 531 (2008) (per curiam) (requiring the reviewing court to ask if the flaw in instructions "had substantial and injurious effect or influence in determining the jury's verdict"). The question in a collateral proceeding is whether the ailing instruction "so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbee*, 431 U.S. 145, 154-155, 97 S. Ct. 1730, 1737 (1977). The question is not merely whether the instruction is undesirable, erroneous, or even "universally condemned." *Id*. Further, federal habeas courts do not grant relief, as might a state appellate court, "simply because a jury instruction may have been deficient in comparison" to a model state instruction. *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S. Ct. 475, 482 (1991).

Moreover, a challenged instruction must be interpreted in the context of the instructions that have previously been given. *United States v. Salter*, 346 F.2d 509, 512 (6th Cir. 1965). In other words, the challenged instruction must not be judged in isolation

but must be considered in the context of the entire jury charge. *Jones v. United States*, 527 U.S. 373, 391, 119 S. Ct. 2090, 2103 (1999).

In Petitioner's case, during the original charge to the jury, the judge instructed that the prosecutor had to prove each element of the crimes charged beyond a reasonable doubt and that if the prosecutor failed to meet that burden, the jurors must find Petitioner not guilty. (10/1/08 Trial Tr. at 529.) The judge further instructed the jurors that Petitioner did not have to prove his innocence. (*Id*.) The jurors were instructed on the elements of armed robbery, first-degree home invasion, unlawful imprisonment, felony-firearm, and conspiracy and were informed that they had to find beyond a reasonable doubt that Petitioner had committed all of the elements of each of the crimes charged before convicting him of the charges. (*Id*. at 537-44.) The judge also instructed the jurors on the elements of aiding and abetting by reading Michigan Criminal Jury Instruction 8.1, the jury instruction on aiding and abetting.[2] (*Id*. at 537-44).

---

[2]CJI 2d 8.1 reads:

(1) In this case, the defendant is charged with committing __________________ or intentionally assisting someone else in committing it.

(2) Anyone who intentionally assists someone else in committing a crime is as guilty as the person who directly commits it and can be convicted of that crime as an aider and abettor.

(3) To prove this charge the prosecutor must prove each of the following elements beyond a reasonable doubt:

(a) First, that the alleged crime was actually committed, either by the defendant or someone else. [It does not matter whether anyone

(continued...)

The judge's response to the jurors' question did not differ substantially from the instruction on aiding and abetting that initially had been provided to the jurors. Although the trial court initially answered "yes" to the jurors' question– thereby perhaps suggesting that they could find Petitioner guilty even if all of the elements of the crimes had not been met if they believed Petitioner had aided and abetted the others– the judge further advised the jurors to refer again to CJI 2d 8.1, which instructed the jurors in part that they could find Petitioner guilty only if the prosecutor has proven beyond a reasonable doubt "that the alleged crime was actually committed, either by the defendant or someone else." *See supra*.

Any possible confusion from the judge's supplemental jury instruction did not deprive Petitioner of a fair trial or diminish the burden of proof, particularly when considered in conjunction with the trial judge's original instructions. *See Jones*, 527 U.S. at 391, 119 S. Ct. at 2103. The original instructions clearly informed the jurors that the prosecutor had to prove all of the elements of the crimes charged beyond a reasonable doubt and that Petitioner did not have to prove his innocence. In his supplemental instruction, the trial judge additionally specifically referred the jurors back to the original aiding and abetting instruction. Therefore, Petitioner is not entitled to habeas relief based

---

[2](...continued)

else has been convicted of the crime.]

(b) Second, that before or during the crime, the defendant did something to assist[] in the commission of the crime.

(c) Third, the defendant must have intended the commission of the crime alleged or must have known that the other person intended its commission at the time of giving the assistance.

on his second claim.

**C. Petitioner's claim concerning his shackling**

Petitioner lastly contends that he was denied a fair trial because he was unjustifiably shackled during trial and that his appellate counsel was ineffective for failing to raise this claim on direct appeal. Respondent contends that Petitioner's shackling claim is procedurally defaulted because he raised this claim for the first time only in his post-conviction motion for relief from judgment and failed to show cause and prejudice, as required by Michigan Court Rule 6.508(D)(3). Nevertheless, a finding that counsel was ineffective for failing to raise the claim on direct appeal may excuse a petitioner's procedural default. *See Williams v. Booker*, 454 F. App'x 475, 478 (6th Cir. 2012) (citing *McCleskey v. Zant*, 499 U.S. 467, 494, 111 S. Ct. 1454 (1991)). For the reasons discussed below, however, the Court concludes that Petitioner's appellate counsel was not ineffective for failing to assert his shackling claim on direct appeal and that Petitioner's shackling claim therefore is procedurally defaulted.

With respect to the procedural default issue, the Michigan Court of Appeals and the Michigan Supreme Court rejected Petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Parker*, No. 301367 (Mich. Ct. App. Feb. 3, 2011) (unpublished opinion); *People v. Parker*, 490 Mich. 858, 802 N.W.2d 344 (2011). Because the orders did not refer specifically to Michigan Court Rule 6.508(D)(3) or Petitioner's failure to raise his shackling claim on direct appeal as the rationale for

rejecting the claim, they are ambiguous as to whether they refer to procedural default or a denial on the merits. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). In other words, the orders are unexplained. *Id*. However, the trial court rejected Petitioner's motion for relief from judgment expressly on procedural default grounds, citing Michigan Court Rule 6.508(D)(3) specifically. (*See* Doc. 6-8.) Thus this Court finds Petitioner's shackling claim procedurally defaulted. *See Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005).

With respect to ineffective assistance of appellate counsel as cause to excuse Petitioner's procedural default, it is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308, 3312 (1983). The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy . . .. Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 754, 103 S. Ct. at 3314. "[A] brief that raises every colorable issue runs the risk of burying good arguments– those that, in the words of the great advocate John W. Davis, 'go for the jugular…'– in a verbal mound made up of strong and weak contentions." *Id*. at 753, 103 S. Ct. at 3313 (citations omitted). The Supreme Court has subsequently noted that:

> Notwithstanding *Barnes*, it is still possible to bring a *Strickland* [*v.*

> *Washington*] claim based on [appellate] counsel's failure to raise a particular claim [on appeal], but it is difficult to demonstrate that counsel was incompetent.

*Smith v. Robbins*, 528 U.S. 259, 288, 120 S. Ct. 746; 765 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "[T]he hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Murray*, 477 U.S. at 536, 106 S. Ct. at 2667 (quoting *Barnes*, 463 U.S. at 751-52, 103 S.Ct. at 3312-13). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F. 3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner fails to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting Petitioner's shackling claim on direct appeal. Appellate counsel filed a thirty-four page appellate brief, in which she raised five substantive claims for relief. (*See* Doc. 6-6.) Petitioner has not shown that appellate counsel's strategy in presenting such claims and not raising other claims was deficient or unreasonable. Moreover, as stated by Respondent in his answer to the

petition for writ of habeas corpus, Petitioner's shackling claim was not a "dead-bang winner" for two reasons.

First, Petitioner presents no evidence suggesting that his leg shackles were visible during the trial. At best, there is a suggestion that a juror may have seen Petitioner in shackles as he was being transported to the courtroom. Controlling Supreme Court precedent provides only that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints *visible to the jury* absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck v. Missouri*, 544 U.S. 622, 629, 125 S. Ct. 2007, 2012 (2005) (emphasis added). *Deck's* facts and holding "concerned only visible restraints at trial." *Mendoza v. Berghuis*, 544 F.3d 650, 654 (6th Cir. 2008). "Restraining a defendant in the courtroom, and restraining him during transport there, are two very different things." *Id*. at 655 (citing *United States v. Moreno*, 933 F.2d 362, 368 (6th Cir. 1991)). As the Sixth Circuit stated in *Mendoza*, "it is *reasonable* for law enforcement officers to transport custodial criminal defendants to and from courthouses across the country with restraints . . . And jurors may well *expect* criminal defendants– at least ones charged with the kind of conduct at issue here– to be restrained during transport to the courtroom." *Id*. (emphasis in original and additional quotation marks omitted).

Second, even assuming that a juror saw Petitioner's leg shackles inside the courtroom, Petitioner nevertheless is not entitled to habeas relief because any error would have been harmless in light of the overwhelming evidence against him. The shackling of

a defendant is harmless error if there is overwhelming evidence of the defendant's guilt. *See Lakin v. Stine*, 431 F.3d 959, 966 (6th Cir. 2005). In light of the fact that four of the victims positively identified Petitioner as one of their assailants and Petitioner was later found by the police hiding in the attic of the victims' house, Petitioner is unable to show that even if the jury did observe him in shackles he was denied due process and a fair trial, so as to entitle him to habeas relief. *Id*.

Because Petitioner's third claim is not a "dead-bang winner," Petitioner fails to establish cause for his procedural default of failing to raise this claim on direct review. *See McMeans v. Brigano*, 228 F. 3d 674, 682-83 (6th Cir. 2000). Because Petitioner does not demonstrate any cause for his procedural default, it is unnecessary for this Court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533, 106 S. Ct. 2661, 2666 (1986). Additionally, Petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider his third claim as a ground for a writ of habeas corpus in spite of the procedural default. Because Petitioner has not presented any new reliable evidence that he is innocent of this crime, a miscarriage of justice will not occur if the Court declines to review Petitioner's third claim on the merits.

In short, the Court concludes that Petitioner did not receive ineffective assistance of appellate counsel with respect to his shackling claim and the claim is procedurally defaulted.

## V. Certificate of Appealability

28 U.S.C. § 2253 governs appeals in § 2254 proceedings. Section 2253(c)(2) states, in pertinent part: "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997). When a district court denies a habeas petition on the merits of the claims presented, a certificate may issue if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000). When a district court denies habeas relief on procedural grounds without reaching the petitioner's constitutional claims, a certificate may issue if the petitioner shows that jurists of reason would find it debatable whether (1) the petition states a valid claim of a denial of a constitutional right *and* (2) the district court was correct in its procedural ruling. *Id.*

For the reasons stated above, the Court finds that jurists of reason would not find its assessment of the merits of Petitioner's claims debatable and would not find its procedural ruling incorrect. In short, Petitioner fails to make a substantial showing of the denial of a constitutional right and thus a certificate of appealability will not issue in this case.

Accordingly,

**IT IS ORDERED**, that Petitioner's motion to amend is **GRANTED**;

**IT IS FURTHER ORDERED**, that Petitioner's motion for an evidentiary hearing is **DENIED**;

**IT IS FURTHER ORDERED**, that Petitioner's application for habeas relief pursuant to 28 U.S.C. § 2254 is **DENIED** and a certificate of appealability will not issue.

DATED:August 2, 2012

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Bruce Parker, #593090
G. Robert Cotton Correctional Facility
3500 N. Elm Road
Jackson, MI 49201

AAG Andrea M. Christensen